UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO DISMISS (DKT. 15)

### I. Introduction

On October 24, 2018, Plaintiffs PAX Water Technologies, Inc. ("PAX") and PSI Water Technologies, Inc. ("PSI") brought this action against Defendant Medora Corporation ("Medora"). Complaint, Dkt. 1. On December 7, 2018 -- three days before the parties' agreed-upon deadline for Defendant's response to the Complaint, *see* Dkt. 8 -- Plaintiffs filed a First Amended Complaint (the "FAC"). Dkt. 14.

Plaintiffs and Defendant "provide competing water treatment technologies to municipalities, public water agencies and districts, and private parties." FAC, Dkt. 14 ¶ 1. The FAC alleges that Defendant caused the publication of two false advertisements about the features and relative performance of the parties' competing products. *Id.* ¶¶ 3-5. Based on these allegations, the FAC advances a single cause of action, for false advertising in violation of Section 43(a) of the Lanham Act. *Id.* ¶¶ 21-88.

On December 21, 2018, Medora filed a motion (the "Motion") to dismiss the FAC for failure to state a claim. Dkts. 15, 16. Plaintiffs filed an opposition (Dkt. 22) and Medora replied. Dkt. 27. A hearing was held on February 25, 2019 and the Motion was taken under submission. Dkt. 30. For the reasons stated in this Order, the Motion is **DENIED**.

### II. Factual Background[1]

#### A. The Parties and the THM Removal Industry

Plaintiffs are both subsidiaries of UGSI Solutions, Inc. FAC, Dkt. 14 ¶¶ 11-12. Defendant is a corporation that sells competing products and services. *Id.* ¶ 13.

This action concerns technology used in treating drinking water to address the concentration of trihalomethanes ("THMs"). *Id.* ¶ 14. When a public drinking water utility or municipality uses chlorine to disinfect drinking water, the chlorine reacts with organic matter in the water. This results in the formation

---

[1] The plausible allegations of the FAC are assumed to be true in evaluating the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | | Date | August 5, 2019 |
|---|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | | |

of THMs as a byproduct of the chlorination process. *Id.* The presence of THMs in drinking water presents a public safety and health risk. *Id.* Accordingly, the U.S. Environmental Protection Agency has established a maximum contaminant level for the concentration of THMs in public drinking water systems. *Id.*

Plaintiffs and Defendant market and sell competing systems to remove THMs from drinking water. *Id.* ¶¶ 17, 20. Municipalities are the primary customers of these systems. *Id.* ¶ 17. A THM removal system generally includes at least one of the following components: a mixer, an aerator, and a ventilator. *Id.* ¶ 16. The FAC includes a diagram showing one system in which Plaintiff combines a particular mixer with a particular aeration system. *See id.*

      B.      The Allegedly Deceptive Advertisements

The FAC seeks relief based on two documents Defendant created. One is titled, "THM Removal Systems Comparison Table" (the "Comparison Table"), and the other is titled, "Misrepresentations by PWT of the 2012 Camarillo, CA Potable Tank Mixing Study" (the "White Paper"). *Id.* ¶ 5. Copies of the two documents are attached to the FAC. *See* Comparison Table, Exhibit 1 to FAC, Dkt. 14-1; White Paper, Exhibit 2 to FAC, Dkt. 14-2.[2]

      1.      <u>The White Paper</u>

The White Paper is related to events that began when the City of Camarillo conducted a head-to-head test to compare Plaintiffs' BM-400 tripod vortex mixer with Defendant's GridBee GS-12 mixer. *See* FAC, Dkt. 14 ¶¶ 3, 27; White Paper, Dkt. 14-2. As noted above, a mixer is one component of a THM removal system. An effective mixer will "circulate the entire volume of water contained in water storage tanks." *See* FAC, Dkt. 14 ¶ 18. The head-to-head comparison assessed the products' "relative effectiveness in mixing a dose of highly concentrated chlorine introduced into the chloraminated water already in" the City of Camarillo's four-million-gallon tank. *Id.* ¶ 27. After the test was completed, the City of Camarillo continued to use Plaintiffs' tripod mixer, but discontinued the use of Defendant's mixer. *Id.*

After this head-to-head comparison, Plaintiffs made certain representations about the results. *Id.* Defendant then sent a letter to Plaintiffs. It stated that Plaintiffs had falsely represented the results of the comparison and provided a competing interpretation of the results. *Id.* Plaintiffs replied through a four-page letter stating that certain of Defendant's positions with respect to the results of the Camarillo comparison were inaccurate or based on "unsupportable assumptions." *Id.* ¶ 28. Plaintiffs also provided a copy of a letter written by the former water superintendent for the City of Camarillo, which Plaintiffs contend refutes certain of Defendant's claims. *See* Exhibit 5 to FAC, Dkt. 14-5 (May 24, 2018 letter from Plaintiffs to Defendant with August 23, 2013 letter from water superintendent attached).

---

[2] The FAC also describes a document titled, "Gridbee Mixer Comparison Table," that was allegedly posted on Defendant's website until it agreed to remove it due to a cease and desist letter sent by Plaintiff. FAC, Dkt. 14 ¶¶ 2-3, 24-26. The FAC alleges that "[t]he advertising that this suit addresses includes" the other two documents, *id.* ¶ 5, but not this third one. Therefore, allegations regarding its contents are relevant only insofar as they may provide context for the other disputed matters, including as to the allegedly false statements contained in advertisements included in the two documents whose contents are challenged.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

The six-page White Paper states Defendant's positions regarding the conclusions that can be drawn from the head-to-head comparison. *See* White Paper, Dkt. 14-2. The White Paper states that it is a response to "at least 2 marketing documents regarding" the head-to-head comparison that have been produced by Plaintiffs. White Paper, Dkt. 14-2.[3] The White Paper states that "[a] truthful analysis would conclude that" (i) Defendant's GS-12 mixer outperformed Plaintiffs' BM-400 mixer; and (ii) Plaintiffs' BM-400 mixer performed "so poorly that its mixing data would have been the same even if the mixer had not been turned on during the study." *Id.* at 2. The White paper also includes a summary of the study, a comparison of the data generated based on use of the competing products, and an analysis of the results in support of these conclusions. *Id.* at 2-7. The White Paper states certain basic facts about the competing products, including their size and cost, as well as the method for installing them. *Id.* at 2. Finally, the White Paper states that "most customers have figured out that the GS-12 is a much better value than the [BM-400] mixer" based on features including its price, design, installation, performance, reliability, modeling, and customer data. *Id.* at 7.

With respect to the conclusions that can be drawn from the head-to-head comparison in Camarillo, the White Paper states that "the study was inconclusive." *Id.* at 6. It notes that the data generated by the head-to-head comparison showed that chlorine was evenly distributed throughout the water tank at the end of the test of Plaintiffs' BM-400 device, whereas no similar distribution appeared at the end of the test of Defendant's GS-12 device. *Id.* at 3, 6. The White Paper contends that rather than demonstrating that Plaintiffs' device effectively mixed the chlorine throughout the tank, "there [is] just as much or more evidence that indicated" that these results were observed because "no mixing at all had occurred." *Id.* at 6.

The FAC alleges that certain statements in the White Paper are false. As to the conclusions in the White Paper about the head-to-head comparison, the FAC alleges that the analysis is based on the flawed "premise that the chlorine level in the Camarillo tank after being mixed . . . should have been much higher than the actual post-mixing testing indicated." FAC, Dkt. 14 ¶ 35. It is alleged that the statement in the White Paper about a different assumption "is either an intentional effort to deceive its intended audience . . . or an egregious display of Medora's lack of knowledge of basic chemistry." *Id.* ¶ 36.

The FAC alleges that this flawed assumption leads to at least four related errors that are stated in the White Paper: (i) Defendant's GS-12 mixer "outperformed" Plaintiffs' BM-400 mixer, *id.* ¶ 34 (citing White Paper, Dkt. 14-2 at 2); (ii) Plaintiffs' BM-400 mixer "mixed so poorly that its mixing data would have been the same even if the mixer had not been turned on during the study," *id.* (citing White Paper, Dkt. 14-2 at 2); (iii) "the 3-feet of water beneath" Plaintiffs' BM-400 mixer "remain[ed] essentially undisturbed and unmixed," *id.* ¶ 38 (citing White Paper, Dkt. 14-2 at 5); and (iv) Plaintiffs' documents in which the results of the head-to-head comparison are described are inaccurate as to the position that Plaintiffs' product is more effective than Defendant's, *id.* ¶ 39 (citing White Paper, Dkt. 14-2 at 6).

The FAC does not contend that the White Paper misstates any of the data that was gathered through the head-to-head comparison. Thus, there are no allegations that the White Paper presents inaccurate

---

[3] Neither of these marketing documents is attached to the FAC. However, certain of Plaintiffs' positions regarding the head-to-head comparison are stated in letters sent by Plaintiffs to Defendant of which copies are attached to the FAC. *See* Exhibits 3 and 5 to FAC, Dkts. 14-3, 14-5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

information regarding the measurements that were obtained of the chlorine concentration at three locations in the Camarillo water tank at times when each party's product was operating. However, the FAC alleges that the White Paper includes at least two misstatements of fact about the features of the parties' products. *First*, the White Paper states that Defendant's mixer cost $7800 at the time of the head-to-head comparison. White Paper, Dkt. 14-2 at 2. The FAC alleges that the cost of Defendant's GS-12 mixer was $15,000. FAC, Dkt. 14 ¶¶ 41-42. *Second*, the White Paper states that Plaintiffs' mixer is "[n]ormally deployed with divers" and is "tied down." White Paper, Dkt. 14-2 at 2. However, the mechanical attachment of the device "is not recommended by Plaintiffs, is not required to keep the tripod mixers from moving within the tank, and is not common." FAC, Dkt. 14 ¶ 45.

      2.      <u>The Comparison Table</u>

The three-page Comparison Table addresses Medora's GridBee Spray Aeration THM Removal System and two competing products. Comparison Table, Dkt. 14-1 at 2-4. It does not include Plaintiffs' names in connection with the two competing products, which are described as "Competitor Spray Aeration THM Removal System (modified wastewater floating aerator)" and "Competitor Passive THM Removal System (water mixer plus a fan in the headspace)." *See id.* However, the FAC alleges that "based on the products' characteristics," "[a]ny person familiar with THM removal systems would recognize that" the products described in the latter two columns of the table are both "manufactured and sold by Plaintiffs, which are the sole source of" products of these types that meet the identified product standards under the ANSI/NSF certification scheme. FAC, Dkt. 14 ¶ 32.

The Comparison Table describes differences among the three identified products with respect to 23 dimensions. *See* Comparison Table, Dkt. 14-1 at 2-4. The FAC alleges that the table "falsely claim[s] or impl[ies] that the nature, characteristics, and/or qualities of [Defendant's] THM Removal System are superior to certain of Plaintiffs' products by misrepresenting the nature, characteristics, and/or qualities of Plaintiffs' products." FAC, Dkt. 14 ¶ 30. The FAC identifies several statements that are allegedly false. These include ones about Plaintiffs' passive THM removal system, *id.* ¶¶ 43-50, Plaintiffs' floating aerator-based THM removal system, *id.* ¶¶ 51-69, and certain direct comparisons between the latter, aerator-based system, and Defendant's aerator-based system, *id.* ¶¶ 70-74. The FAC also alleges that certain specific statements in the Comparison Table are not based on any evidence and, on information and belief, that "no independent support exists." *Id.* ¶¶ 75-76. Certain of the allegedly false statements contained in the Comparison Table also appear in the White Paper. *See id.* ¶¶ 45, 49.

      C.      Dissemination of Allegedly Deceptive Advertisements

Both of the documents at issue were accessible on Defendant's website at "multiple times," including just before the filing of both the Complaint and the FAC. *Id.* ¶¶ 28-29.[4] The FAC alleges the following on information and belief: (i) the White Paper and the Comparison Table have been publicly accessible on Defendant's website since at least May 2018 and July 2018, respectively; and (ii) Defendant has provided copies of the White Paper and the Comparison Table to actual or potential customers of the parties' products and/or has verbally repeated the false and misleading statements and claims contained in the White Paper. *Id.* ¶¶ 78-79.

---

[4] As of the date of issuance of this Order, neither document remains accessible at the websites stated in the FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

The FAC includes allegations that the allegedly false statements are material and that they will deceive the intended audience. It also alleges that the false statements were made in interstate commerce, caused harm to Plaintiffs and led to unwarranted financial gain to Defendant. Further, the FAC alleges that the statements are likely to mislead actual and potential customers, that Plaintiffs incurred costs in responding to them, and that Defendant took these actions knowingly and willfully. *Id.* ¶¶ 80-87.

      D.     Relief Sought

As noted, the FAC advances a single cause of action, for false advertising in violation of Section 43(a) of the Lanham Act. *Id.* ¶¶ 21-88. Plaintiffs seek injunctive relief, an accounting of profits, general and/or special damages, punitive damages, attorney's fees and costs and pre-judgment interest. *Id.* at Prayer for Relief, Dkt. 14 at 30-31.

**III.    Analysis**

    A.     Legal Standards

        1.     Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may bring a motion to dismiss a cause of action that fails to state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

        2.     False Advertising Under Lanham Act § 43(a)

A person who places into commerce a "false or misleading description" or a false "representation of fact" concerning the "nature, characteristics, [or] qualities" of goods is subject to liability under Section 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(B). A prima facie case for false advertising requires a showing that: "(1) the defendant made a false statement either about the plaintiff's or its own product;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

(2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008). A statement may be shown as false based on its language, "by necessary implication" or by a showing that the statement was "literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

When a plaintiff contends that a statement is false on its face or by necessary implication, the statement "must always be analyzed in its full context." *Id.* A party who seeks to establish that a statement is false because, although it may be literally true, it is misleading, must show that the "advertisement has misled, confused, or deceived the consuming public." *Id.* at 1140. "Reactions of the public are typically tested through the use of consumer surveys." *Id.*

    B.    Application

        1.    <u>White Paper</u>

            a)    Whether the FAC Identifies Actionable False Statements in the White Paper

Citing *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490 (2d Cir. 2013), Defendant contends that all allegedly false statements identified by the FAC in the White Paper are "non-actionable scientific conclusions," which are neither false nor misleading statements of fact. Motion, Dkt. 16 at 11-12. Plaintiffs respond that they have "identified multiple false statements of fact" and that *ONY* is distinguishable. Opposition, Dkt. 22 at 11-14.

In general, only statements of fact are actionable under the Lanham Act. Statements of opinion are not. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). For example, opining on the legality of a competitor's compliance with state licensing requirements is, absent "clear and unambiguous" authority on such compliance issues, a non-actionable opinion. *See id.* "Typically, whether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury." *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) (internal citation, alternation, and quotation marks omitted). Where the advertising at issue "involves medical, scientific, or technical matters, expert witnesses will be necessary to unravel truth from falsity." 5 McCarthy on Trademarks and Unfair Competition § 27:56 (5th ed. 2019).

*ONY* affirmed the dismissal of a false advertising claim because the allegedly false statements were "non-actionable scientific conclusions." 720 F.3d at 498. The Second Circuit explained that "statements of pure opinion -- that is, statements incapable of being proven false -- are protected under the First Amendment." *Id.* at 496 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)). *ONY* noted that "[s]cientific academic discourse poses several problems for the fact-opinion paradigm of First Amendment jurisprudence." *Id.* at 496. "In a sufficiently novel area of research, propositions of empirical 'fact' advanced in the literature may be highly controversial" and "courts are ill-equipped to undertake to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

referee such controversies." *Id.* at 497. Accordingly, the Second Circuit held that scientific conclusions that had been "presented in publications directed to the relevant scientific community" through "peer-reviewed academic journals" should be subject to scrutiny "in the pages of peer-reviewed journals," with "the scientific public sit[ting] as the jury." *Id.*

The statements at issue in *ONY* concerned a study that compared the effectiveness of medical treatments created by the parties. *Id.* at 493. The study was conducted by defendants' employees and physicians. It concluded that the defendant's product was more effective than the plaintiff's. *Id.* The study was then published in a peer-reviewed journal. *Id.* at 493-94. The plaintiff sued, alleging that certain specific conclusions about the relative effectiveness of the medical treatments were false and that defendant violated by the Lanham Act by publishing them. *Id.* at 494. The Second Circuit concluded that "to the extent a speaker or author draws conclusions from non-fraudulent data, based on accurate descriptions of the data and methodology underlying those conclusions, on subjects about which there is legitimate ongoing scientific disagreement, those statements are not grounds for a claim of false advertising under the Lanham Act." *Id.* at 498. At least one court in this District has applied *ONY* to a Lanham Act claim based on allegedly false statements that "accurately reflect[ed] conclusions from peer-reviewed scientific journal articles." *Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D. D.*, No. SA CV14-0248-AG-AN, 2014 WL 12579802, at *3-5 (C.D. Cal. June 4, 2014).

Although the Ninth Circuit has not discussed *ONY*, the Fifth Circuit did so in *Eastman Chemical Co. v. Plastipure, Inc.*, 775 F.3d 230 (5th Cir. 2014). *Eastman* affirmed a jury verdict of a violation of the Lanham Act notwithstanding the scientific nature of the challenged statements. *Id.* at 237. The parties there produced competing plastic-based products. *Id.* at 233. The defendant then created sales brochures that reported that the results of a pending peer-reviewed journal article would show that the plaintiff's products contained significant levels of a harmful substance. *Id.* at 233-34. At trial, both sides presented expert testimony about the proper way to test for this substance. *Id.* at 234.

Following a detailed discussion of *ONY*, the Fifth Circuit distinguished it because "[t]he plaintiff in *ONY* sought to enjoin statements made within the academic literature and directed at the scientific community." *Id.* at 236. In *Eastman*, the statements at issue were not in a peer-reviewed article. Although the study at issue was subsequently published in a peer-reviewed journal, the operative complaint was based on "snippets" of the study that were included in "statements made in commercial advertisements and directed at customers." *Id.* at 236-37. In this context, the Fifth Circuit reasoned that "it is of no moment that the commercial speech in this case concerned a topic of scientific debate." *Id.* at 236. "Advertisements do not become immune from Lanham Act scrutiny simply because their claims are open to scientific or public debate. Otherwise, the Lanham Act would hardly ever be enforceable -- 'many, if not most, products may be tied to public concerns with the environment, energy, economic policy, or individual health and safety.'" *Id.* at 236 (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 n.5 (1980)).

*Eastman* is persuasive. The scientific nature of a conclusion does not mean that it is not actionable *per se*. Instead, the question is whether a scientific conclusion was stated within a commercial advertisement. If so, the dissemination of it is non-actionable only if it is a statement of opinion, a determination that "[t]ypically" is a "question of fact" that cannot be resolved on a motion to dismiss. *See PhotoMedex*, 601 F.3d at 931.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | | Date | August 5, 2019 |
|---|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | | |

For the reasons stated below with respect to that element of the analysis, the FAC adequately alleges that the White Paper is a commercial advertisement. Therefore, that certain statements in the White Paper may be deemed scientific, does not bar the claim as a matter of law. Instead, whether the scientific statements are accurate presents issues of fact.

The allegedly false statements are within two general categories. *First*, factual statements about the two products compared in the White Paper. *See* FAC, Dkt. 14 ¶¶ 41-42 (alleging that cost of Defendant's product as stated in the White Paper is inaccurate); *id.* ¶ 45 (alleging that Defendant's statements that Plaintiffs' mixer normally must be "tied down" and/or "deployed with divers" are inaccurate). These factual statements are not like those discussed in *ONY*.[5]  *Second*, the FAC alleges that there are incorrect conclusions in the White Paper due to its flawed "premise" about the expected chlorine level in the tank during the study. *See* FAC, Dkt. 14 ¶¶ 34-39. These include that Defendant's mixer outperformed Plaintiffs' and that Plaintiffs' mixer performed so poorly that the water condition would have been the same even if it had not been activated. *Id.* ¶¶ 34. To be sure, to prevail on their claim, Plaintiffs may need to prove that the conclusions stated in the White Paper are contrary to the "well accepted science of water chemistry." *Id.* ¶ 40. However, such a determination can be made through the normal processes of civil litigation.

For the foregoing reasons, the FAC adequately alleges that the White Paper contains false statements of fact.

        b)       Whether the FAC Adequately Alleges that the White Paper is Commercial Advertising

The second element of a false advertising claim under the Lanham Act is whether the statement at issue was made in a commercial advertisement or promotion. Such "a statement of fact must be: (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a classic advertising campaign, but may consist instead of more informal types of promotion, the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry." *Newcal Indus., Inc.*, 513 F.3d at 1054 (citing *Coastal Abstract Service,* 173 F.3d at 735) (quotation marks omitted).[6]

---

[5] Defendant's arguments regarding these two allegedly false factual statements are unpersuasive. *First*, as to the statements about cost information, Defendant contends that the FAC is insufficient because its allegations of falsity are supported by a letter from an individual associated with the City of Camarillo. *See* Reply, Dkt. 27 at 7-8. The allegation is sufficient to state a claim. Whether the pricing of Defendant's process was stated accurately is a question of fact. *Second*, as to statements about whether Plaintiffs' mixer must be "tied down" and/or "deployed with divers," Defendant argued at the hearing that these allegations are insufficient because they appear in the portion of the FAC addressing the Comparison Table, not the portion about the White Paper. *See* FAC, Dkt. 14 ¶ 45. However, the FAC does link these alleged statements to the White Paper. *See id.* ("Medora made similar claims about tripod mixers in the [White Paper]."). This is sufficient to have put Defendant on notice that one of the allegedly false statements in the White Paper is that Plaintiff's mixer is "[n]ormally deployed with divers, tied down." White Paper, Dkt. 14-2 at 2.

[6] One district court has observed that the second element of this test "is likely in need of revision" in light of *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). *See Ariix, LLC v. NutriSearch Corp.*, No. 17CV320-LAB (BGS), 2018 WL 1456928, at *4 (S.D. Cal. Mar. 23, 2018). However, as in that case, because "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

Defendant contends that neither the first nor fourth elements of the test for a commercial advertisement is adequately alleged with respect to the White Paper.

(1) <u>Commercial Speech</u>

"The core notion of commercial speech is 'speech which does no more than propose a commercial transaction.'" *Rice v. Fox Broadcasting Co.*, 330 F.3d at 1181 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)). "Where the facts present a close question" as to whether speech is commercial, "'strong support' that the speech should be characterized as commercial speech is found" where the speech satisfies all three of the *Bolger* factors: (i) whether the speech is an advertisement; (ii) whether the speech refers to a particular product; and (iii) whether the speaker had a financial motivation to make the statement. *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983)). All three factors need not "necessarily be present in order for speech to be commercial," and even if all of them are, it does not require a finding that the speech at issue is commercial. *See Bolger*, 463 U.S. at 67 n.14. Absent a determination that the speech at issue is commercial, a Lanham Act claim could present First Amendment issues. *See Eastman*, 775 F.3d at 236 ("[I]n [the] commercial context, the First Amendment is no obstacle to enforcement of the Lanham Act." (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985))).

The FAC adequately alleges that the White Paper is commercial speech. As to the "core" inquiry, i.e., whether the White Paper proposes a commercial transaction, its language can reasonably support such an inference. Thus, the introduction of the White Paper states that its purpose is to support two conclusions: Defendant's product "outperformed" Plaintiffs' competing product during the head-to-head comparison, and Plaintiffs' product performed "so poorly that its mixing data would have been the same even if the mixer had not been turned on during the study." White Paper, Dkt. 14-2 at 2, 7. In addition to providing information on the comparative price and features of the competing products, *id.* at 2, the White Paper "summarize[s]" its contents as follows: Plaintiffs' communications have improperly discredited Defendant's product. *Id.* at 7. It also states that it is a response to Plaintiffs' "marketing documents." *Id.* at 2. Based on these assertions, the White Paper then encourages readers to conclude -- as "most customers" have -- that Defendant's product "is a much better value" than the one offered by Plaintiffs. *Id.* at 7. It identifies the features as to which Defendant's product is superior, and includes Defendant's logos, phone number and website address. *See id.* Further, the FAC alleges that the White Paper was in fact used to persuade actual or potential customers to purchase Defendant's product, by posting the White Paper on Defendant's website and by stating its contents and/or providing copies of it when Defendant's agents and employees met "with actual or potential customers of the parties' products." FAC, Dkt. 14 ¶¶ 78-79.

The FAC includes adequate allegations with respect to each of the *Bolger* factors. *First*, there are adequate allegations that the White Paper is in the form of advertising because it "is speech about a product or service by a person who is offering that product or service at a price, directed to persons who

---

first and fourth elements were not implicated by *Lexmark*'s holding," *id.*, it is appropriate to apply the existing doctrine to those elements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

may want, and be willing to pay for, that product or service." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 960-61 (2002) (describing first *Bolger* factor). As noted, the FAC alleges that the White Paper is directed toward potential customers, FAC ¶¶ 78-79, an allegation that is plausible based on its contents. Defendant's contention that the White Paper is merely a non-advertising "white paper that explores the scientific and statistical credibility of the Camarillo case study," Motion, Dkt. 16 at 13, is unpersuasive. The FAC alleges that the context for the White Paper was a dispute between the parties regarding the appropriate interpretation of the Camarillo head-to-head comparison. The White Paper presented Defendant's position on the issues. It was titled "Misrepresentations by [Plaintiffs] of the 2012 Camarillo, CA Potable Tank Mixing Study." White Paper, Dkt. 14-2 at 2. For these reasons, the White Paper was a component of that commercial dispute. It was to be provided to customers and potential customers to explain why they should purchase Defendant's product notwithstanding that Plaintiffs produced competing materials stating that this comparison shows Plaintiffs' product is superior.[7]

Defendant does not address the second or third *Bolger* factors in detail. Both are satisfied. As to the reference to a particular product, the White Paper refers repeatedly to two specific products: Defendant's GS-12 mixer and Plaintiffs' BM-400 product. As to economic motivation, the White Paper seeks to persuade those who read it that Defendant's product "outperformed" Plaintiff's and provides better value because it is less expensive than Plaintiff's product. *Id.* The FAC adequately alleges economic motivation through Defendant's financial interest in generating more sales of its product based on the statements about it and Plaintiffs' product in the White Paper.

(2)   Sufficiently Disseminated

As noted, there can be liability under Section 43(a) only where the advertisement or promotion is "disseminated sufficiently to the relevant purchasing public." *Coastal Abstract Service*, 173 F.3d at 735 (internal citation and quotation marks omitted).

The parties dispute whether allegations of dissemination must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). They agree that the Ninth Circuit has not addressed this issue. Consequently, each party relies on decisions by district courts, which have reached different outcomes on this issue. *Compare, e.g.*, *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1094-95 (S.D. Cal. 2017) (Rule 9(b) applies to Lanham Act claims that sound in fraud), *and Tortilla Factory, LLC v. Better Booch*, LLC, No. 2:18-cv-02980-CAS-SK, 2018 WL 4378700, at *7 (C.D. Cal. Sept. 13, 2018) (same), *with Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. C 08-04397 WHA, 2008 WL 6742224, at *4 (N.D. Cal. Dec. 18, 2008) (declining to impose heightened pleading standard).[8] If Rule 9(b) applies,

---

[7] The White Paper states that "Medora Corporation has not used this study for any marketing purposes." White Paper, Dkt. 14-2 at 6. Defendant's reliance on this sentence (Motion, Dkt. 16 at 13) is misplaced. The FAC alleges that the study was produced for, and has been used in, commercial advertising. The truth of those allegations cannot be resolved on a motion to dismiss.

[8] In its reply, Defendant contends that because the heightened pleading standard applies to Lanham Act claims for false advertising, Rule 9(b) is relevant not only to the dissemination issue, but also as to whether the White Paper is commercial speech. *See* Reply, Dkt. 27 at 11. However, Defendant has not shown why Rule 9(b) applies to, or affects the analysis of, the commercial speech issue. A plausible allegation that the specific material attached to the FAC is commercial speech is sufficient to withstand a motion to dismiss even if Rule 9(b) also required that a plaintiff "articulate the who, what, when, where and how of the alleged misconduct." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

it requires a plaintiff to allege specific details about the fraud, "including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.*; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (a plaintiff must "articulate the who, what, when, where and how of the misconduct alleged").

Assuming without deciding that the heightened pleading standards of Rule 9(b) apply, Plaintiff has satisfied those standards.

The allegations of the FAC include the following: (i) the White Paper has been accessible on Defendant's public website since at least May 2018, FAC, Dkt. 14 ¶ 78; (ii) through this posting, it "reached a significant number of actual or potential customers of the parties' products," *id.*; (iii) Defendant has provided copies of the White Paper to actual or potential customers of the parties' products and/or has made the false and misleading statements and claims to them that are contained in the White Paper, *id.* ¶ 79; and (iv) "[t]he market for THM removal products is limited primarily to municipal and water utility customers who seek products for their unique potable water treatment systems," *id.* ¶ 84. These allegations are sufficient to state a claim that the material was disseminated as a commercial advertisement. This conclusion is supported by the specialized nature of the products at issue and the limited market for their sale. *Cf. Coastal Abstract Service,* 173 F.3d at 735 ("Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act.") (internal citation and quotation marks omitted); *see also Millennium Dental Techs. Inc. v. Terry*, No. SA CV18-0348-DOC-KES, 2018 WL 5094965, at *13 (C.D. Cal. July 16, 2018) ("[R]eading the [complaint] with the required liberality, it is plausible that because these statements were available on a public internet forum, they were disseminated broadly. Whether these statements can ultimately [be] said to have been made in 'advertising' or 'promotion' is a disputed factual issue" not appropriate for decision on a motion to dismiss.); *Leatherman Tool Grp., Inc. v. Coast Cutlery Co.*, 823 F. Supp. 2d 1150, 1155 (D. Or. 2011) (sufficient evidence of dissemination included material available on website, in catalogs, and in product packaging).

Defendant contends that certain of these allegations do not satisfy Rule 9(b) because they are based only "on information and belief." Motion, Dkt. 16 at 14 (citing *ProconGPS, Inc. v. Star Sensor LLC*, No. C 11-3975 SI, 2011 WL 5975271, at *3 (N.D. Cal. Nov. 29, 2011)). However, the FAC provides adequate "notice of the particular misconduct which is alleged to constitute the fraud charged so that [Defendant] can defend against the charge and not just deny that [it has] done anything wrong." *Swartz*, 476 F.3d at 764. The FAC identifies the precise misrepresentations at issue: those included in the six-page White Paper and whose accuracy is disputed in the FAC. *See* FAC, Dkt. 14 ¶¶ 33-42. To be sure, the FAC alleges that certain instances of dissemination involved statements by unnamed "agents and/or employees" of Defendant at unstated times and to an unstated number of customers or potential customers. *Id.* ¶ 79. However, information about the particular employees of Defendant who disseminated the White Paper, and the names of the potential customers to which it was provided, are "peculiarly within the opposing party's knowledge" and therefore can be alleged based upon information and belief where the complaint identifies "the facts upon which the belief is founded." *Mulato v. WMC Mortg. Co.*, No. C 09-03443 CW, 2009 WL 3561536, at *5 (N.D. Cal. Oct. 27, 2009). Here, such

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

allegations are sufficient when read together with the allegations regarding dissemination through a website as well as the content of the alleged misrepresentation, which is provided through an attachment to the FAC.

\* \* \*

For the foregoing reasons, the FAC adequately alleges that the White Paper contains false statements of fact in a commercial advertisement. Therefore, the Motion is **DENIED** to the extent it seeks dismissal on the basis of claims related to the White Paper.

    2.    <u>Comparison Table</u>

As noted, the final element of a false advertising claim is that a plaintiff must show that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal*, 513 F.3d at 1052. Defendant contends that the FAC does not contain adequate allegations as to this element in connection with the claims based on the Comparison Table. Motion, Dkt. 16 at 15. It argues that the Comparison Table does not contain any "direct reference" to Plaintiffs' product and that, as a result, Plaintiffs "must allege actual injury," which Defendant contends they have not done. *Id.*

The parties dispute whether a presumption of irreparable injury applies in this action. Defendant contends that it does not because the Comparison Table contains only "a blind comparison of products." *Id.* However, assuming without deciding that Plaintiffs must allege actual injury, the FAC is adequate. It contains a conclusory allegation regarding injury. *See* FAC, Dkt. 14 ¶ 84 ("Medora's actions have caused harm and damage to Plaintiffs and have resulted in a corresponding improper financial benefit and gain to Medora."). In support of that conclusion, the FAC alleges, *inter alia*, that there is a "limited" market for THM removal products consisting of "municipal and water utility customers who seek products for their unique potable water treatment systems." *Id.* Consequently, it alleges that the "loss of just one customer as a result of Medora's false and misleading advertising results in substantial financial loss." *Id.*

When viewed together with the allegations regarding dissemination of the Comparison Table, *id.* ¶¶ 78-79, these allegations are sufficient to provide notice to Defendant about the theory of damages and the scope of the claimed injury -- lost sales to potential buyers in the limited market.

That these allegations are adequate is confirmed by Defendant's failure to cite cases in which this issue is resolved on a motion to dismiss. *See, e.g.*, *CKE Rest. v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139, 1145 (C.D. Cal. 2007) (denying preliminary injunction in part due to inadequate showing of actual injury); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, No. CV 09-00565-DDP-RZ, 2011 WL 4852472, at *2 (C.D. Cal. Oct. 12, 2011) (granting summary judgment where non-movant acknowledged it had no evidence of measurable injury).

For these reasons, the Motion is **DENIED** to the extent it seeks dismissal on the basis of claims related to the Comparison Table.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV18-09143 JAK (AGRx) | Date | August 5, 2019 |
|---|---|---|---|
| Title | Pax Water Technologies, Inc., et al. v. Medora Corporation | | |

**IV.     Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**. Defendant shall file an answer to the FAC on or before August 19, 2019. *See* Fed. R. Civ. P. 15(a)(4)(A). It shall not be combined with Defendant's Counterclaim and Third Party Complaint. *See* Standing Order 12.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |